Adrian W. DeWind Chairman Temporary State Commission on Banking, Insurance and Financial Services
Your Counsel has asked whether the Temporary State Commission on Banking, Insurance and Financial Services (hereafter "Commission"), the members of the Commission appointed by the Governor, and the professional staff and consultants of the Commission are subject to sections73 and 74 of the Public Officers Law.
The Commission was established by chapter 567 of the Laws of 1983 and consists of twenty-three members. A chairman and sixteen other members were appointed by the Governor, including four representatives of the insurance industry, four of the banking industry, four of other financial institutions and four representing consumers, the academic community and other interested parties (L 1983, ch 567, § 43[1]). The remaining members, serving ex officio, are the Superintendent of Banks, the Superintendent of Insurance, the Chairman of the Senate Banking Committee, the Chairman of the Assembly Banking Committee, the Chairman of the Senate Insurance Committee and the Chairman of the Assembly Insurance Committee. The purpose of the Commission is to:
 "study and evaluate the structure and dynamics of the financial services industry both on a national basis and in the state of New York and make such recommendations as may be appropriate with respect to changes in New York legislation, regulations and policies regulating financial services and institutions, including insurance companies, banks, brokerage institutions, and other financial organizations. The commission shall also evaluate the extent to which the public interest would be served by such changes, and the methods by which the interests of insureds, depositors, investors and other consumers of financial services may be protected as a consequence of such changes."
You have not asked about the applicability of sections 73 and 74 to the ex officio members of the Commission, since they clearly are covered in their capacities as officers of State Departments and members of the Legislature. Further, those consultants to the Commission who are truly independent contractors, rather than employees, would not be subject to their provisions. The determination of any individual's status is beyond the scope of this opinion.
The mandate of the Commission is to study and evaluate the structure and dynamics of the financial services industry and make such recommendations as may be appropriate regarding changes in legislation, regulations and policy (L 1983, ch 567, § 43[4]). It seems clear from the structure of the Commission's membership that the legislative intent was to draw upon the knowledge and experience of various sectors of society by allocating seats on the Commission to members of the insurance, banking and financial services industries, as well as to consumers, academics and other interested parties. The obvious purpose was not to insulate the Commission from the views of private interests, but to provide a forum in which such views would be synthesized in the process of formulating the Commission's recommendations.
Section 73 of the Public Officers Law prohibits certain private activities by officers or employees of State agencies, members of the Legislature or legislative employees. For example, such persons may not perform services on a contingency fee basis regarding matters before any State agency; may not receive compensation for services to be rendered in relation to a matter before the Court of Claims; are prohibited from selling to the State goods or services valued at twenty-five dollars or more, except through competitive bidding; and are restricted in appearances before State agencies for a period subsequent to the termination of their employment by an agency (Public Officers Law. § 73[2], [3], [4] and [7]).
The statute defines a state agency as "any state department, or division, board, commission or bureau of any state department" (Public Officers Law, § 73[1]). We note that the legislation creating the Commission is silent as to whether the Commission is a "commission * * * of any state department". Further, the Legislature has structured the Commission's membership to include representatives of the insurance industry, the banking industry, financial institutions, consumers, the academic community and other interested parties. Clearly, the Legislature anticipated that the members and staff of the Commission would include representatives of private industry in fields subject to pervasive regulation by the State. Thus, it does not appear to have been the intention of the Legislature that membership on this temporary Commission form a basis for restrictions or disqualifications under section 73. Indeed, a contrary result would discourage such individuals from volunteering their time to public service. Moreover, a knowing and intentional violation of section 73 constitutes a misdemeanor (id.,
§ 73[10]). Therefore, section 73 is criminal in nature and subject to strict statutory construction (McKinney's Statutes, § 271[a]). In our opinion, the silence of the Legislature regarding whether the Commission is a "State agency" as defined by section 73, and the clear intent of the Legislature that representatives of heavily regulated private industry serve as members and staff of the Commission creates a reasonable doubt regarding the applicability of section 73. Since reasonable doubt as to the applicability of penal statutes must be resolved against the extension of the statute's reach (McKinney's Statutes, § 271[a]), it is our opinion that section 73 would not be interpreted to apply to the Commission.
Section 74 differs essentially from section 73. Where section 73 is specific, section 74 is general; where section 73 defines criminal conduct, section 74 establishes standards for appropriate conduct; and, most importantly for this analysis where section 73 requires strict construction, section 74 does not. Indeed, pursuant to the responsibilities vested in the Attorney General for the application of section 74 (cf. Executive Law, § 63[11]), it has been our practice to construe the section broadly so as to give full effect to the intent of the Legislature in enacting this Code of Ethics. We find no reason to except the Commission from coverage under section 74.
The Commission is charged with a public duty of great consequence. It will report to the Governor and Legislature its findings and recommendations regarding matters which go to the very heart of society's capacity to insure equity in the market place. There are few things which government can do of greater material moment than the regulation of the industries under scrutiny by this Commission. These industries touch the lives and fortunes of every citizen, and their just oversight by government is a keystone of any public strategy for economic justice. To say that the members and employees of such a governmental Commission are beyond the constraints of public ethics would not only do considerable violence to the policy goals underlying section 74 but would also undermine public confidence in the Commission itself and inevitably render suspect its processes and its product.
When the Commission was created, the Legislature did not affirmatively place it within a State department, thus giving rise to ambiguity which, along with other factors, exempts the Commission from section 73. However, in the construction of section 74, this ambiguity may be assessed and offset by other factors. The weighty mission of the agency as discussed above is one such factor. The considerable power vested by the Legislature in this Commission is another. By the terms of its creating statute, the Commission may subpoena witnesses and documents; it can hold public and private hearings; and it can exercise "all of the powers of a legislative committee". It can request and "shall receive from any court, department, division, board, bureau, commission or agency of the state or any political subdivision thereof such assistance" as it may require. Viewed alongside these substantial powers, the Legislature's silence on whether the Commission is within a State department fades into insignificance as a basis for exempting the Commission, its members and its employees from the constraints of the Code of Ethics. Such powers also distinguish the Commission from the Executive Advisory Commission on Insurance Industry Regulatory Reform which we found to be not covered by section 74 (1982 Op Atty Gen 82-F2).
Section 74 is drafted to be flexible. For example, its operation here would not bar from membership on the Commission individuals employed in the industries under scrutiny since the Commission is clearly designed to include such people. It would, however, require all Commission members and employees to pursue the public interest in the Commission's work. The knowledge and experience which Commission members bring from the various sectors enumerated in the creating statute must be devoted to the advancement of the public good and not the private interests from which the members come. In accepting a public office and the opportunity to shape public policy, the Commission members and employees assume an obligation to adhere to the standards of conduct which the public rightfully expects of those holding a public trust. Those standards are expressed in section 74 of the Public Officers Law and, in our opinion, are applicable to the Commission.
We conclude that the members and staff of the Temporary State Commission on Banking, Insurance and Financial Services are subject to section 74 but not to section 73 of the Public Officers Law.